Filed 10/13/23  P. v. Gallardo CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B322375 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA048566) |
| v. | |
| CARLOS LEONEL GALLARDO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Alan Schneider, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance Winters, Chief Assistant Attorney General, Susan Pithey, Senior Assistant Attorney General, Michael Keller and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Carlos Leonel Gallardo was convicted of second degree murder and attempted murder in 2008.  Gallardo now appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1]  The trial court concluded that Gallardo had not made a prima facie showing of eligibility for resentencing because he was convicted as a perpetrator or direct aider and abettor who acted with express malice.  Gallardo contends the trial court erred because an ambiguity in the jury instructions allowed the jury to convict him on a theory of imputed malice.  We disagree and affirm the denial of Gallardo's petition for resentencing.

## BACKGROUND

### *The underlying offense*

We take our statement of the evidence underlying Gallardo's crime from the Court of Appeal opinion affirming his judgment of conviction.  (*People v. Gallardo* (Mar. 1, 2012, B228628) [nonpub. opn.] (*Gallardo*).)[2]

---

[1]    All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)  We therefore refer to the law formerly codified at section 1170.95 as section 1172.6 for the remainder of this opinion.

[2]    We have taken judicial notice of records from *Gallardo*, namely, the reporter's transcript on appeal, which includes the reporter's transcript of the trial.

We refer to the factual background from *Gallardo* "for background purposes and to provide context for the parties' arguments."  (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.)  We do not rely on the facts in *Gallardo* to review the trial

On March 13, 2005, "[a]t approximately 1:00 a.m., a group of 10 to 20 men and women arrived at the Gentleman's Players Club in Sun Valley in two vehicles, a Hummer limousine and a white Escalade (hereinafter the 'Hummer group'). . . . [¶] At roughly the same time, appellant Gallardo arrived in his white convertible Mustang, accompanied by four or five men." The two groups argued outside the club "over the girls," and tensions continued to rise between them inside the club.

Around 3:30 a.m., the two groups left the club. "Some members of the Hummer group were getting into the Hummer, while others were standing next to the vehicles and talking. [¶] Meanwhile, Gallardo and his companions entered his Mustang. Gallardo drove out of the club's lot, parked at the edge of the driveway, stepped out of the car, opened the Mustang's trunk, and appeared to search for something inside." The security guards testified it looked like "Gallardo put something from the trunk in his waistband."

"Gallardo reentered the Mustang and drove to the middle of the street. He caused the Mustang to 'burn rubber,' apparently by holding the brake while simultaneously pressing the gas pedal. The Mustang's engine was loud and the tires smoked and kicked up gravel from the street." Shots were fired from the Mustang. As Gallardo drove away, a security guard "heard 'return fire' coming '[f]rom the vicinity of the Escalade.' "

Francisco Herrera Jr., who had been standing in the street, was shot and killed. "The trajectory of the bullet was consistent with a standing victim being shot by a person seated in a vehicle."

court's determination of his eligibility for resentencing at the prima facie stage. (*Id.* at p. 988.)

3

***Gallardo's conviction, sentence, and direct appeal***

Gallardo's first trial in 2007 resulted in a hung jury and was declared a mistrial.  Gallardo was re-tried in 2008.

The jury found Gallardo guilty of the second degree murder of Francisco Herrera (§ 187, subd. (a)); the attempted murder of John Doe (§§ 664, 187, subd. (a)); possession of a firearm by a felon (former § 12021, subd. (a)(1)); and shooting from a motor vehicle (former § 12034, subd. (c)).  The jury found the allegation that Gallardo personally and intentionally discharged the firearm not true with respect to the murder, attempted murder, and shooting from a motor vehicle offenses.  The jury also found not true the allegation that Gallardo's attempted murder of John Doe was willful, deliberate, and premeditated.  The jury was not instructed on the natural and probable consequences doctrine or the felony murder rule.

The trial court sentenced Gallardo to 72 years to life, plus 20 years.  A different panel of this court affirmed Gallardo's convictions on appeal in 2012.  (*Gallardo, supra*, B228628.)

***Gallardo's petition for resentencing***

Gallardo filed a petition for resentencing in March 2022. The petition consists of a preprinted form on which Gallardo checked boxes indicating he was convicted of murder and attempted murder following a trial and "could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."[3]

---

[3]     Gallardo did not specify in his petition whether he was seeking to be resentenced on his second degree murder conviction, his attempted murder conviction, or both.  On appeal, Gallardo argues the trial court erred in denying his petition for resentencing only as to his second degree murder conviction.

4

The petition did not recite any additional facts relating to the underlying convictions. At Gallardo's request, the trial court appointed counsel to represent him.

The People opposed the petition, arguing Gallardo's conviction was not eligible for resentencing because the jury was not instructed on any theories of imputed malice and found Gallardo acted with actual malice. The People also argued the court could rely on the opinion from Gallardo's direct appeal to make determinations of eligibility at the prima facie stage.

Gallardo filed a reply in support of his petition, contending that the trial court could not rely on facts in the prior appellate opinion or engage in factfinding to determine whether Gallardo acted with actual malice. Gallardo argued that his petition was "facially valid" because he "alleged that a charging document was filed permitting the prosecution to proceed on both his murder and attempted murder convictions based on theories that make him illegible[*sic*] for resentencing relief . . . ."

In July 2022, the trial court denied Gallardo's petition for failing to establish a prima facie case for relief. The court specifically stated that it was not considering the facts in the opinion from Gallardo's direct appeal and made its decision after reviewing the jury instructions. The court found that because no natural and probable consequences or felony murder instruction was given, Gallardo had been convicted of second degree murder and attempted murder "either as a perpetrator or a direct aider and abettor," and not pursuant to any theory under which malice was imputed to him based solely on his participation in a crime. Gallardo timely appealed.

5

**DISCUSSION**

**I.     Senate Bill Nos. 1437 and 775 and Section 1172.6**

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule.  (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)  The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)  Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) expanded Senate Bill 1437's mandate in part by eliminating criminal liability for convictions for attempted murder obtained pursuant to the natural and probable consequences doctrine.

These amendments have eliminated imputed malice liability for second degree murder and attempted murder. (*People v. Lopez* (2023) 88 Cal.App.5th 566, 575 (*Lopez*); *People v. Montes* (2021) 71 Cal.App.5th 1001, 1008.)  The amendments also eliminated aider and abettor liability for crimes committed by the actual perpetrator "that were not intended but were reasonably foreseeable," which were previously actionable under the natural and probable consequences doctrine.  (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 123 (*Pacheco*); *People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.)  But a principal in a murder, including an aider or abettor, can still be criminally liable if he or she personally possesses malice aforethought, whether express or

implied.  (*People v. Silva* (2023) 87 Cal.App.5th 632, 639–640; *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596 (*Offley*) [Senate Bill 1437 did not "alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator' "].)

Senate Bills 1437 and 775 created a procedure, now codified at section 1172.6, in which a person convicted of a qualifying offense under the former law may seek resentencing if he or she could no longer be convicted of those offenses under amended section 188.  (*Lewis, supra*, 11 Cal.5th at p. 959; *Gentile, supra*, 10 Cal.5th at p. 847.)  A defendant commences the procedure by filing a petition containing a declaration that, among other things, he or she could not presently be convicted of murder under the current law.  (*Strong, supra*, 13 Cal.5th at p. 708.)  In relevant part, the statute requires the court, "[a]fter the parties have had an opportunity to submit briefings," to "hold a hearing to determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause.  If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."  (§ 1172.6, subd. (c).)

## II.    Prima Facie Stage and Standard of Review

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' "  (*Lewis, supra*, 11 Cal.5th at p. 971.)  "While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a

7

prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Ibid*.) Courts may not reject the petitioner's allegations " 'on credibility grounds' " or engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at pp. 971, 972.) Rather, "[t]he record should be consulted at the prima facie stage only to determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see, e.g., *People v. Harden* (2022) 81 Cal.App.5th 45, 54–56 (*Harden*) [considering jury instructions and verdicts to determine whether defendant made prima facie showing of eligibility]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 (*Ervin*) [considering sentencing enhancements, jury instructions, closing arguments, and verdicts at prima facie stage].)

A petitioner fails to make a prima facie showing for relief "if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.) The trial court's denial of a resentencing petition at the prima facie stage " 'is a purely legal conclusion,' " which appellate courts review de novo. (*Ervin*, *supra*, 72 Cal.App.5th at p. 101.)

8

**III.  The Record of Conviction Conclusively Establishes that Gallardo Was Convicted of Second Degree Murder Under a Theory of Express Malice**

Because Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis for murder liability, an aider and abettor can no longer be held liable for unintentional deaths that occurred during the commission of a crime.  (*Pacheco*, *supra*, 76 Cal.App.5th at p. 124.)  However, Senate Bills 1437 and 775 did not eliminate "direct" aiding and abetting liability, which requires that the accomplice "necessarily 'know and share the murderous intent of the actual perpetrator.' "  (*Offley*, *supra*, 48 Cal.App.5th at p. 596; *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 590 ["the direct aider and abettor must have the same mental state as the actual perpetrator of the charged crime"].)  Accordingly, to establish a prima facie showing of relief under section 1172.6, a petitioner must establish he was convicted on a now invalid theory of imputed malice.

In Gallardo's case, the trial court did not instruct the jury regarding any theories of imputed malice.  The prosecutor in closing argued that "when [Gallardo] acted, he had a state of mind called malice aforethought," explained that the jury could find Gallardo either acted "with express specific intent to kill" or with conscious disregard for human life, and explicitly endorsed the theory that Gallardo acted with the specific intent to kill.

Gallardo contends that even in the absence of any specific instruction on theories of imputed malice, an ambiguity in the jury instructions made it possible the jury convicted him of second degree murder by imputing malice to him.  Specifically, Gallardo argues the definition of aider and abettor in CALJIC No. 3.01 does not adequately explain that to convict a defendant

9

of aiding and abetting an implied malice murder, a jury must find the defendant acted with conscious disregard for life.[4]

Gallardo relies on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) for this argument. Langi was one of four people who physically assaulted a victim during a robbery. (*Id*. at pp. 975–976.) The victim died after falling during the attack and hitting his head. (*Id*. at p. 975.) The jury was instructed on first degree felony murder and direct aiding and abetting and ultimately convicted Langi of second degree murder. (*Id*. at pp. 977.) The trial court denied Langi's petition for resentencing at the prima facie stage. (*Ibid*.) The appellate court reversed, finding the jury could have convicted Langi as an aider and abettor, and CALJIC No. 3.01 did not adequately explain that to be convicted of aiding and abetting second degree implied malice murder, Langi had to "have acted with the mental state of implied malice." (*Id*. at p. 983.) In other words, the aiding and abetting instruction did not specifically explain that the accomplice must have " 'knowledge that the perpetrator intended to commit the [life-endangering] act, intent to aid the perpetrator in the commission of the act, [and] knowledge that the act is dangerous to human life, and . . . conscious disregard for human life.' " (*Ibid*.) The court concluded this deficiency in CALJIC No. 3.01 allowed for the possibility that the jury found Langi guilty of aiding and abetting second degree murder by imputing to him the implied

---

[4] CALJIC No. 3.01 states: "A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she: [¶] (1) [w]ith knowledge of the unlawful purpose of the perpetrator, and [¶] (2) [w]ith the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) [b]y act or advice aids, promotes, encourages or instigates the commission of the crime."

malice of the actual killer, even in the absence of an instruction on the natural and probable consequences doctrine.  (*Id.* at pp. 982, 984.)

Here, however, the jury found Gallardo guilty of both second degree murder and attempted murder.  The court instructed the jury that to find Gallardo liable for attempted murder as a direct aider and abettor, it must find that he shared the express malice of the person who committed the act.  The court instructed the jury with CALJIC No. 8.66, which provides that to prove attempted murder, the People must establish "[a] direct but ineffectual act was done by one person towards killing another human being" and that "[t]he person committing the act harbored *express malice aforethought*, namely, a specific intent to kill unlawfully another human being."  (Italics added.)  While in *Langi*, nothing in the record of conviction resolved any ambiguity created by CALJIC No. 3.01, here the jury's findings that Gallardo was guilty of both second degree murder and attempted murder arising from the same shooting establishes the jury found Gallardo himself acted with express malice.

The decision in *People v. Coley* (2022) 77 Cal.App.5th 539 (*Coley*) is instructive.  In *Coley*, two victims were walking along the highway when shots were fired from a car occupied by Coley and three other occupants, killing one of the victims.  (*Id.* at p. 542.)  The prosecution proceeded on a theory that Coley was the driver and another occupant was the shooter.  (*Ibid.*)  The jury was instructed on first degree murder, second degree murder, and attempted murder, among other offenses, but not felony murder or the natural and probable consequences doctrine.  (*Ibid.*)  The jury found Coley guilty of second degree murder and attempted murder.  (*Ibid.*)  In the appeal from an order denying

11

his resentencing petition, Coley relied on *Langi* to argue the jury could have imputed implied malice to him to find that he aided and abetted second degree murder. (*Coley*, at pp. 546–547.) The court rejected Coley's argument, reasoning that the record of conviction showed he "was convicted of murder based on his aiding and abetting of the same shooting that gave rise to the attempted murder conviction." (*Id*. at p. 547.) As such, "by finding [Coley] guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice when he aided and abetted the second degree murder." (*Ibid*.)

Here, as in *Coley*, Gallardo was involved in a shooting from a motor vehicle resulting in a fatality. The record of conviction showed he was convicted of second degree murder based on his aiding and abetting of the same shooting that gave rise to his attempted murder conviction. The jury was instructed that it must find Gallardo "harbored express malice aforethought, namely, a specific intent to kill" to convict Gallardo of attempted murder. It received no instruction on any theories of imputed malice. The jury returned a verdict finding Gallardo guilty of attempted murder and second degree murder. Thus, as in *Coley*, the jury's finding of express malice for purposes of Gallardo's attempted murder conviction indicates it necessarily found he acted with express malice in aiding and abetting the second degree murder.

Gallardo does not distinguish *Coley* from this case or disagree with its conclusion. Instead, he contends the trial court could not apply the *Coley* reasoning here without engaging in improper factfinding. Not so. The record of conviction includes jury verdicts, jury instructions, and closing arguments. (*Harden*, *supra*, 81 Cal.App.5th at pp. 54–56; *Ervin*, *supra*, 72 Cal.App.5th

12

at p. 106; *Lopez, supra*, 88 Cal.App.5th at pp. 576–577 & fn. 7 [finding the record conclusively established petitioner was guilty of first degree felony murder based in part on the "undisputed" evidence, including "both sides' closing arguments," that showed the murder occurred during a robbery].)

A review of the record of conviction alone reveals Gallardo was convicted of attempted murder and second degree murder based on his direct aiding and abetting of the same shooting—a single incident where shots were fired from Gallardo's Mustang toward members of the Hummer group outside the club. In their closing arguments, both defense counsel and the prosecutor referred to a single shooting as the incident underlying all charges against Gallardo. The People argued to the jury that it could find Gallardo guilty of murder "because he shot the gun" multiple times, and that the "direct but ineffectual act" for purposes of attempted murder "would be shooting the gun." Gallardo's counsel did not dispute this characterization of the underlying incident, stating explicitly during closing that he was "[n]ot telling [the jury] that the shots weren't fired from the Mustang," only that "we don't know who fired the shots . . . ." There was no reference to a second shooting or other incident giving rise to different bases for the charges of murder and attempted murder. Accordingly, the parties' closing arguments identified only one action by Gallardo as "aiding and abetting" the shooting. The prosecution's aiding and abetting theory involved Gallardo taking the gun from the trunk of his car, "hand[ing] the gun" to "one of the other guys in the car" who ultimately committed the shooting. Gallardo's counsel similarly summarized the prosecution's aiding and abetting theory:

13

"[Gallardo] must have gone to the trunk. He must have gotten the gun. He must have given the gun to someone else."

Because the convictions resulted from the same act—a single shooting incident using the gun Gallardo provided—the jury's finding of express malice for Gallardo's attempted murder conviction applies to the second degree murder conviction as well. (See *People v. Young* (1987) 189 Cal.App.3d 891, 910 [finding that because the requisite mens rea for first degree murder was express malice, "the jury necessarily found express malice on the attempted murders committed as part of a single, indivisible transaction"].)[5] The trial court did not have to weigh conflicting evidence, engage in factfinding, make credibility determinations, or otherwise exercise discretion to arrive at this conclusion. (*Lewis*, *supra*, 11 Cal. 5th at pp. 971–972.) Moreover, Gallardo has not proposed that he would introduce any evidence to show the convictions did not arise from the same act, and Gallardo cannot use the process in section 1172.6 to "relitigate issues already decided." (*Coley*, *supra*, 77 Cal.App.5th at p. 549.)

Because Gallardo cannot show he was convicted of second degree murder under a theory of imputed malice based solely on his participation in the crime, his petition fails to make a prima facie showing of his eligibility for resentencing under

---

[5] As explained by the court of appeal in *People v. Moles* (1970) 10 Cal.App.3d 611, "were a defendant to shoot two men during a single incident, one of whom died, *the basic criminal elements of the act, the shooting and the mental state, would be the same as to each simultaneous shooting*; the fact of death would be but a manifestation of the seriousness of the result, not of the actor's mental state when the act was committed." (*Id.* at p. 616, italics added.)

14

section 1172.6 as a matter of law.  We affirm the trial court's denial of Gallardo's petition.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


We concur:



EDMON, P. J.



LAVIN, J.